# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

G.C., a minor, by DENISE MARIE COSCO,
his next friend, parent and natural guardian,

                        **Plaintiff,**

-vs-                                        Case No. 6:07-cv-808-Orl-28GJK

**THE SCHOOL BOARD OF SEMINOLE
COUNTY, FLORIDA and KATHLEEN
MARY GARRETT,**

                        **Defendants.**

_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motions:

1. Motion to Exclude Report and Testimony of Dr. Jeffrey Danziger and Incorporated Memorandum of Law (Doc. No. 83);

2. Motion to Exclude Report and Testimony of Dr. Bennett Leventhal and Incorporated Memorandum of Law (Doc. No. 85);

3. Motion to Exclude Report and Testimony of Dr. Catherine Trapani and Incorporated Memorandum of Law (Doc. No. 84); and

4. Defendant Kathleen Mary Garrett's Motion to Exclude from Evidence Plaintiff's Expert Testimony and Memorandum of Law in Support (Doc. No. 76);

**I.    BACKGROUND**

On December 17, 2007, Plaintiff, G.C. a minor, by his mother Denise Marie Cosco (herein, "GC" or "Plaintiff") filed an amended complaint (the "Complaint") pursuant to the Civil

Rights Act, against Defendants, the School Board of Seminole County, Florida ("SCSB") and Kathleen Mary Garrett ("Garrett") (collectively, the "Defendants"). Doc. No. 43.[1] GC also asserts a negligent hiring, supervision, and retention claim against SCSB. *Id.* Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), on February 13, 2009, Garrett filed the first motion outlined above ("Garrett's Motion") with respect to Drs. Jeffrey Danziger, Bennett Leventhal, Catherine Trapani and Dr. Deborah O. Day, and SCSB filed three other motions set forth above ("SCSB's Motions") with respect to Drs. Danziger, Leventhal, and Trapani. Doc. Nos. 76, 83-85. The motions filed by the Defendants shall collectively be referred to as the "Motions." On March 20, 2009, GC filed a response in opposition ("Response I") to Garrett's Motion. Doc. No. 89. On March 20, 2009, GC filed a consolidated response ("Response II") to SCSB's Motions. Doc. No. 90.

**A. The Expert Witnesses**

    1. <u>Dr. Danziger</u>

Dr. Danziger is a Board Certified Psychiatrist, Board Certified in Psychiatry, Forensic Psychiatry, Geriatric Psychiatry, and Addictions Psychiatry. Doc. No. 78-4 at 1. He is a Diplomat of the National Board of Medical Examiners. *Id.* He has been qualified as an expert and testified in court a number of times, including testifying approximately fifteen (15) times in federal court. Doc. No. 91-2 at 2. Dr. Danziger was retained by GC "to provide opinions regarding the mental condition, personality traits, and psychiatric disorders, if any, of the Defendant Garnett and the correlation between any mental condition, personality trait and/or psychiatric disorder and Defendant Garrett's alleged mistreatment and abuse of the autistic

---

[1] There are eight (8) related cases: 6:07-cv-155-28GJK; 6:07-cv-834-28GJK; 6:07-cv-835-28GJK; 6:07-cv-1313-28GJK; 6:07-cv-1465-28GJK; 6:07-cv-1481-28-GJK; 6:07-cv-1494-28GJK and 6:07cv-1529-28GJK.

children entrusted in her care." *Id.* at 1-2. He based his opinions "upon review of hundreds of e-mails, sexual in nature, written and received by Defendant Garrett (retrieved from her classroom computer), color photographs of Defendant Garrett and other individuals, sexual in nature, retrieved from Defendant Garrett's classroom computer, Defendant Garrett's personal website and numerous entries from www.Collarme.com, police and investigative reports and deposition testimony." *Id.* at 3. His methodology consisted of his extensive review and analysis of the documents described coupled with his "education, skill, training and extensive experience in psychiatry . . ." *Id.* at 3-4.

Dr. Danziger opined that the incidents of Garrett described by teacher's aides, if true, are consistent with sadistic behavior. Doc. No. 91-2 at 20. He stated that alleged behavior of Garrett involving humiliation and dominance would be most consistent with sexual sadism. *Id.* He concluded:

> It is my opinion that the pattern described in these records is consistent with someone suffering from a sexual paraphilia, both sexual masochism and sexual sadism. The various incidents and behaviors described by the teacher's aides, are consistent with an individual whose sadistic fantasies and behaviors spilled over into the classroom, where vulnerable students suffering from autism with language and communication difficulties were victimized.

*Id.* at 21.

2. Dr. Leventhal

Dr. Leventhal is a psychiatrist and a Diplomat of the American Board of Psychiatry and Neurology in both General Psychiatry and Child and Adolescent Psychiatry, and a Fellow of both the American Psychiatric Association and the American Academy of Child and Adolescent Psychiatry. Doc. No. 91-4 at 2. He has written extensively about treatment of developmental

3

disabilities, including autism. Doc. No. 85-2 at 18-30. The focus of his current work is "on the diagnosis, etiology and treatment of early-onset childhood psychopathology, particularly autism/developmental disorders, ADHD and behavior disorders." Doc. No. 91-4 at 2. Dr. Leventhal was retained by GC regarding the alleged mistreatment and abuse by Garrett. Doc. No. 91-4 at 1. The scope of his retention is "to review voluminous documents and records relevant to this matter and render an opinion thereupon." *Id.* at 1-2. His methodology consisted of his "extensive review and analysis of" documents described in his expert report. *Id.* at 2-3. In his affidavit, Dr. Leventhal states that "a personal examination of Plaintiff. . . was not necessary to render the opinions presented within [his] expert report." *Id*. at 2. Dr. Leventhal formulated an opinion utilizing his "education, skill, training, and extensive experience in psychiatry." *Id.* at 2-3. Ultimately, Dr. Leventhal opined that the alleged abuse and maltreatment by Garrett "will have direct adverse consequences on these children and their ability to learn social, cognitive and adaptive skills." Doc. No. 85-2 at 6.

      3. Dr. Trapani

Dr. Trapani, a psychologist, is currently the Program Director of Education at the Marcus Autism Center (MAC) in Atlanta, Georgia. Doc. No. 84-2 at 1. Her responsibilities include administration of both the School and Early Intervention Program at the MAC overseeing the delivery of individual Education Program Plans and Individual Behavior Intervention Plans. *Id*. at 1-2. She supervises all staff working with the students. *Id*. The focus of her clinical work is on autism, ADHD, and learning disabilities. Doc. No. 84-2 at 2. Dr. Trapani was retained to render an opinion relating to the effects of the alleged maltreatment and "the lack of appropriate policy, procedure and practice as it relates to [GC]'s experience while a student in Defendants'

4

class at South Seminole Elementary School." Doc. No. 91-5 at 1-2. She states that a personal examination of GC was not necessary to render the opinions set forth in her report. *Id.* Among other things, Dr. Trapani reviewed medical and educational records, interview and deposition transcripts, investigative reports, and Seminole County School Board policy and procedure manuals. *Id.* Her methodology consisted of an "extensive review and analysis of the aforementioned documents. *Id*. at 2-3. With the aforementioned data and information and utilizing [her] education, skill, training and extensive experience, [she] formulated the opinion, to a reasonable degree of probability or certainty, as stated in [her] report." *Id*.

Dr. Trapani concluded that GC was the victim of seven different types of abuse by Garrett. Doc. No. 77-3 at 6-7. According to Dr. Trapani, the abuse suffered by GC was due in part to the policies and procedures of SCSB. *Id.* at 7-9. Dr. Trapani offered no opinion regarding the effect of the abuse on GC. *See* Doc. No. 77-3.

4. <u>Dr. Day</u>

Dr. Day, a Licensed Psychologist and Licensed Mental Health Counselor, has authored numerous publications and presented a number of lectures particularly relevant to domestic violence and child abuse, neglect and trauma. Doc. No. 91-3 at 2. A significant portion of her practice is dedicated to forensic psychology. *Id*. She has testified in federal court on five (5) occasions. *Id*. GC retained Dr. Day to review documents and records in order to evaluate GC with regard to the alleged traumatic experience of alleged abuse and mistreatment by Garrett. *Id.* at 1-2. She based her review on the direct evaluation of GC, parent interview, and review of medical and educational records. *Id.* at 2. Her methodology consisted of her "extensive review

and analysis of the aforementioned documents, administration of psychological test measures, parent interview and direct evaluation of Plaintiff GC." *Id.*

Dr. Day administered the following tests: Peabody Picture Vocabulary Test-4 (Form A); Expressive Vocabulary Test; Comprehensive Test of Nonverbal Intelligence; Wide Range Achievement Test-4th Edition; and Vineland Adaptive Behavior Scales: 2nd Edition. Doc. No. 77-2 at 7. Dr. Day opined as follows:

> Because [GC] does not engage in many social activities and lacks the cognitive sophistication and vocabulary to process his emotional upsets, he continues to act out. [GC's] increased aggression towards school officials is a consequence of the behaviors inflicted upon him, as well as the modeling done with him. . . . Maladaptive behaviors become reinforced behavior. While [GC] was unable to express some of his frustrations about his treatment by Ms. Garrett, he did demonstrate school refusal with verbalized fears of punishment. His acting out increased, and his mother reported he has never recovered from the significant regressions he demonstrated during this time period. There is a significant risk that [GC] has learned not to verbalized concerns thereby increasing his risk for future victimization.

*Id.* at 10-11.

### B. SCSB *Daubert* Motions and GC's Response II

SCSB's Motions with respect to Drs. Danziger, Leventhal, and Trapani present several similar arguments. Doc. Nos. 83-85. SCSB seeks to have their expert reports excluded on the following bases: 1) The experts did not examine GC or any of the related plaintiffs;[2] 2) their reports are essentially identical with respect to each related plaintiff;[3] and 3) their reports are based on conclusory, unsubstantiated facts. *Id.* SCSB alleges that Drs. Danziger and Leventhal violated The Principles of Medical Ethics by offering expert opinions without examining GC.

---

[2] The Defendants provide no authority to support their argument that an expert witness is required to examine the claimant.
[3] Dr. Danziger's report is identical for each plaintiff.

6

Doc. Nos. 83 at 10-11, 85 at 2, 9.  Ultimately, SCSB argues that neither Dr. Danziger's or Dr. Leventhal's report will assist a trier of fact, which is mandatory under *Daubert*.  Doc. Nos. 83 at 12, 85 at 8.  SCSB maintains that Dr. Trapani's report should be excluded because she does not establish that she has training and knowledge of Florida law in the area of education, teacher's rights and collective bargaining agreements with teacher's unions. Doc. No. 84 at 2. SCSB challenges her competency and maintains her report will not assist a trier of fact. *Id.* at 2, 7.

GC argues that Dr. Danziger is "quadruple board certified," and "his opinions are principally related to a psychiatric diagnosis of . . . Garrett and the medical correlation between . . . Garrett's psychiatric diagnosis and the maltreatment and abuse inflicted upon [GC] by Garrett."  Doc. No. 90 at 5-6.  Based on Dr. Danziger's education, training, and experience, GC asserts that he is qualified to render expert testimony regarding his report.  *Id*. With respect to Dr. Leventhal, GC states that in a related case, *A.B. v. School Board of Seminole County* (not listed above), Dr. Leventhal was approved by this Court as an expert witness. Doc. No. 90 at 6-7. Thus, GC asserts that Dr. Leventhal is qualified to render expert testimony in this case.  *Id*. at 7. GC states that based on Dr. Trapani's education, training, and experience, she is qualified to render expert testimony in this case concerning the maltreatment of GC and the effects arising therefrom. Doc. No. 90 at 8.

GC further asserts that there is no legal precedent to support SCSB's argument that Drs. Danziger, Leventhal, and Trapani were obligated to examine him.  *Id.*  GC maintains the prior Court order in the *A.B.* case allowing Malcolm Roberts, M.D. to offer expert testimony without examining the plaintiff supports his argument. Doc. No. 90 at 10.  Finally, GC states that no ethical violations were committed.  Doc. No. 90 at 11-12.  Thus, considering their education,

7

training and experience, GC maintains that Drs. Danziger, Leventhal and Trapani are qualified to render expert testimony in this case. *Id.* at 16-17.

### C. Garrett's *Daubert* Motion and GC's Response I

Garrett challenges the admissibility of expert reports from Drs. Day, Trapini, Leventhal, and Danziger. Doc. No. 76. As to Dr. Day, Garrett states that she "has no research experience, no therapeutic experience and no educational training dealing with autistic or retarded children." *Id.* at 10. Garrett states that Dr. Day's competency is "suspect". *Id.* Most bothersome to Garrett is that Dr. Day neglected to consider the "extensive emotional and psychological trauma" suffered by GC prior to being in Garrett's classroom. *Id.* at 10-11. "Likewise, [Dr. Day] has failed to take into account [GC's] reported incidents of seeing abuse and experiencing abuse while he was a child at his home and at his present residential facility." *Id.* at 11. According to Garrett, Dr. Day interviewed GC five years after the events in her classroom. *Id.* Thus, Garrett maintains that "there is no way to separate effects of television coverage on this boy from his memories." *Id.* at 11.

Garrett's arguments with respect to Drs. Trapani and Leventhal are similar to the arguments raised by SCSB that were outlined above. Doc. No. 76 at 12-14. With respect to each of these doctors' opinions, Garrett ultimately states they are "irrefutable, speculative, conjectural, and based on expertise that has nothing to do [with] retarded autistic children, who have a history of physical abuse." *Id.* at 19. Accordingly, Garrett appears to challenge their ability to assist the trier of fact. *Id.*

Regarding Dr. Danziger, Garrett states:

> Dr. Danziger is proposed as an expert witness for his opinion about Ms. Garrett's alleged sexual preferences and their possible relationship to the

claims of GC. Dr. Danziger does not have any special training or research, according to his vitae, in deviant sexual practices and child abuse. Nor does he refer to any scientific principles or research relating [to] sexual practices, such as sexual masochism and sadism, to child abuse. He is writing ipse dixit, really just making it up.

*Id.* at 14. Garrett maintains that his report violates the Principles of Medical Ethics. *Id.* Specifically, Section 7 of the Principles of Medical Ethics states:

> On occasion psychiatrists are asked for an opinion about an individual who is in the light of the public attention or who has disclosed information about himself/herself through public media. In such circumstances, a psychiatrist may share with the public his/her expertise about psychiatric issues in general. However, it is unethical for a psychiatrist to offer a professional opinion <u>unless he/she has conducted an examination and has been granted proper authorization for such a statement</u>.

*See* Doc. No. 83-2 at 5, Principles of Medical Ethics (emphasis added). Garrett states that because Dr. Danziger did not examine GC, he violated the Principles of Medical Ethics. Doc. No. 76 at 14. Furthermore, she argues that his opinions regarding her sexuality and/or sexual preferences are unsubstantiated, inadmissible and improper. *Id.* at 15-16. Thus, Garrett states that Dr. Danziger's report should be excluded as specious, speculative and inflammatory. Doc. No. 82 at 13.

In his Response I, GC states that Garrett's Motion primarily focused on the opinions offered as opposed to the methodology utilized in forming them. Doc. No. 89 at 2-3. According to GC, Garrett's Motion "attempts to circumvent the roles of the jury to weigh the credibility of the factual information utilized by a given expert in forming his opinion, and, further, in weighing the testimony of each expert in light of competing testimony proffered by the expert of the opposing party." *Id.* at 2. GC maintains that his experts are qualified to testify and their respective testimony is within their areas of expertise. *Id.* at 5-9.

9

With respect to methodology, GC states that Dr. Leventhal followed the same methodology as in the related case of *A.B*. *Id.* at 10. GC maintains that each of his experts reviewed, among other things, his educational and medical history; SCSB's policy and procedure manuals; deposition transcripts; investigative and police reports and emails and photographs of Garrett. Doc. No. 89 at 10. GC states that Dr. Day evaluated GC and his mother. *Id.* Finally, GC maintains that Dr. Danziger's opinions "are reliable and consistent with generally accepted practice in the forensic psychiatry community and American Academy of Psychiatry and the Law ethic guidelines." *Id.* at 12.

## II. THE LAW

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principals and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id*. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) and *Daubert*, 509 U.S. 579, the Supreme Court held that the trial court must perform a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. "The burden of laying a proper foundation for the admissibility of an expert's testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1261 (11th Cir. 2004). The party offering the expert has "the burden to show that his expert [is] 'qualified to testify competently regarding the matters he intend[s] to address; [] the methodology by which the expert reache[d] his conclusions is sufficiently

reliable; and [] the testimony assists the trier of fact.'" *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (quoting *Maiz v. Virani*, 253 F.3d 641, 664 (11th Cir. 2001)).

In *Daubert*, the Supreme Court identified the following non-exclusive list of factors a court should consider when determining the admissibility and reliability of expert testimony:

1) whether the expert's methods or techniques can be or have been tested;
2) whether the technique, method, or theory has been subject to peer review and publications;
3) whether the known or potential rate of error of the technique or theory when applied is acceptable; and
4) whether technique, method, or theory has been generally accepted in the scientific community.

509 U.S. 579, 594-95 (1993). In *Kumho Tire Co.*, the Supreme Court held that the *Daubert* factors applied not only to expert testimony based on scientific knowledge, but also to expert testimony based on general principles, technical knowledge, and other specialized knowledge. 526 U.S. 137, 141 (1999). Nonetheless, the trial court's "gatekeeping" function "'inherently require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." *U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *McCorvey*, 298 F.3d at 1257) (emphasis supplied).

In *U.S. v. Frazier*, the Eleventh Circuit addressed the admissibility of expert testimony based on experience and held:

> The Committee Note to the 2000 Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony." Fed.R.Evid. 702 advisory committee's note (2000 amends.). Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express. As we


> observed in *Quiet Technology,* "while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability . . . [O]ur caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony." 326 F.3d at 1341-42. . . . Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, **"[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.** The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed.R.Evid.702 advisory committee's note (2000 amends.)

387 F.3d at 1261 (emphasis added). Thus, before admitting the opinion of an expert, the trial court is required to ensure that the expert's opinion, even if formed based on considerable experience and expertise, is supported by more than the expert's word and that there are "good grounds based on what is known." *See Daubert*, 509 U.S. at 590. Moreover, "[t]he *Daubert* requirement that the expert testify to scientific knowledge -- conclusions supported by good grounds for every step in the analysis – means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain v. Metabolife*, 401 F.3d 1233, 1245 (11th Cir. 2005); *see also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion.").

Not all errors made by an expert mandate exclusion. For instance, if an analysis or study is based on inaccurate date, such flaws are more appropriate for cross-examination. *See Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (citing *Daubert*, 509 U.S. at 596). "[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its

admissibility." *Quiet Technology*, 326 F.3d at 1345 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)). According to the Supreme Court, the "failure to include variables will affect the analysis' probativeness [rather than] its admissibility." *Bazemore v. Friday*, 478 U.S. 385, 400 (1986). Furthermore, whether an expert report should be excluded due to the his or her failure to examine the plaintiff is an issue more appropriately addressed on cross-examination. *See, e.g., Covas v. Coleman Co., Inc.*, 2005 WL 6166740 at *6 (S.D. Fla. July 27, 2005) (failure to physically examine equipment at issue is a proper subject for cross-examine); *see also Walker v. SOO Line Railroad Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (medical expert testimony alleging employee was injured when struck by lightning was admissible although the expert did not personally examine the employee).

### III. ANALYSIS

**The Daubert Motions**

After a thorough review of the Daubert Motions and their respective Responses, the Court makes the following findings:

1. The experts outlined above are competent to offer an expert opinion within the scope of their retention;

2. The experts' testimony is based upon sufficient facts or data and is the product of reliable principals and methods; and

3. The expert reports and testimony will assist the trier of fact.

The Defendants provide no authority to support their argument that an expert witness is required to examine the claimant. The experts are sufficiently qualified to render opinions as requested

by GC.[4] The methodologies utilized were appropriate as the experts rendered opinions based on a review of GC's educational and medical history; SCSB's policy and procedure manuals; deposition transcripts; investigative and police reports and emails and photographs of Garrett.[5] They applied the principles and methods reliably to the facts of the case. Finally, it is premature for this Court to decide whether the facts relied upon by the experts are substantiated by evidence. That portion of the Motions will not be ripe for consideration until the evidence is presented at trial.

## IV. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the:

1. Motion to Exclude Report and Testimony of Dr. Jeffrey Danziger and Incorporated Memorandum of Law (Doc. No. 83) be **DENIED**;

2. Motion to Exclude Report and Testimony of Dr. Bennett Leventhal and Incorporated Memorandum of Law (Doc. No. 84) be **DENIED**;

3. Motion to Exclude Report and Testimony of Dr. Catherine Trapani and Incorporated Memorandum of Law (Doc. No. 85) be **DENIED**; and

4. Defendant Kathleen Mary Garrett's Motion to Exclude from Evidence Plaintiff's Expert Testimony and Memorandum of Law in Support (Doc. No. 76) be **DENIED**.

---

[4] *See* qualifications set forth above.
[5] Section 7 of the Principles of Medical Ethics states that an opinion about an individual in the public light should not be expressed by a psychiatrist who has not conducted "an examination". *See* Principles of Medical Ethics of the American Psychiatric Association. Unfortunately, neither party has cited any provision of that code defining what type of examination is required. As set forth above, a records examination was conducted. As in *Covas* and *Walker*, the Court recommends that the lack of a physical examination is an issue more appropriately addressed on cross-examination.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 12, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Counsel of Record
Unrepresented Parties