**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**G.C., a minor, by Denise Marie Cosco,
his next friend, mother, and natural
guardian,**

        **Plaintiff,**

**-vs-**                                  **Case No. 6:07-cv-808-Orl-28GJK**

**THE SCHOOL BOARD OF SEMINOLE
COUNTY, FLORIDA and KATHLEEN
MARY GARRETT,**

        **Defendants.**

_____

# ORDER

Kathleen Garrett ("Garrett") was tried in state court on charges of abusing autistic students in her middle school class.[1] In the instant civil action,[2] one of her former students, G.C., asserts a claim against Garrett under 42 U.S.C. § 1983 (Count II), alleging that Garrett deprived him of his "constitutional civil rights and his Fourteenth Amendment due process liberty interest." (Am. Compl., Doc. 43, ¶ 49). Additionally, G.C. asserts claims against the School Board of Seminole County (the "School Board"), alleging two counts: § 1983 (Count

---

[1] During the state criminal proceedings, Garrett faced three counts of child abuse and one count of aggravated child abuse. The state court entered judgments of acquittal on two counts; the jury acquitted her of one of the remaining counts and found her guilty of the other.

[2] Fourteen companion cases have been filed in this Court arising from essentially the same operative facts.

I) and a state-law claim for negligence in hiring, supervision, and retention (Count III). (Id. ¶¶ 39, 56-70). Before the Court is Garrett's Motion for Summary Judgment (Doc. 81) and the School Board's Motion for Summary Judgment (Doc. 79).

## I. Facts[3]

G.C. was born on December 30, 1988 and lived in Maryland until moving to Florida in 2000. (Doc. 93 at 5). During the 2001-2002 and 2002-2003 school years, G.C. was a special education student in Garrett's class at South Seminole Middle School ("South Seminole"). (Id.). In the Amended Complaint, Plaintiff alleges that Garrett subjected G.C. to various acts of physical, emotional, and psychological abuse and that he witnessed the severe conduct that Garrett directed towards his fellow classmates, much of which has been documented elsewhere, see J.V. ex rel. L.O. v. Seminole County Sch. Bd., No. 6:04-cv-1889, Doc. 164 (M.D. Fla. filed Mar. 21, 2007), resulting in emotional and psychological trauma to G.C. (Am. Compl. ¶¶ 32-33). Garrett was removed from South Seminole in October 2004—approximately eighteen months after G.C. last attended class with Garrett—due to the allegations of abuse which resulted in Garrett's eventual arrest and prosecution.

G.C.'s mother, Denise Cosco ("Mrs. Cosco"), first noticed that G.C. was not developing properly when he was approximately three or four months old. (Cosco Dep. at 10). G.C. was later diagnosed with having autistic features at the age of two, (id. at 11), and formally diagnosed with Pervasive Developmental Delay and Attention Deficit Disorder at the

---

[3]All facts and inferences are construed in favor of Plaintiff, the non-moving party.

age of five, (Ex. B to Doc. 81, at 1). Despite his developmental disability, G.C. has been described by his mother as "verbal" and capable of carrying on a conversation. (Cosco Dep. at 28).

In the Amended Complaint, Plaintiff claims that Garrett physically and emotionally abused G.C. in a myriad of ways, including "routinely strik[ing] G.C. on the knees, leaving bruises," (Am. Compl. ¶ 33(a)), "physically grab[bing] G.C., forcing him face first into a brick wall while ordering he [sic] 'lick the bricks,'" (id. ¶ 33(c)), "routinely curs[ing] at G.C.," (id. ¶ 33(d)), and "physically hurt[ing] G.C. many times, leaving bruises on his arms and side," (id. ¶ 33(e)).[4] Plaintiff also claims that G.C. suffered psychological abuse as a result of

---

[4]Plaintiff also alleges that Garrett placed "G.C. in a bathroom/closet on several occasions" and "was kept in the bathroom/closet on these occassions with the light out and the door closed and locked." (Am. Compl. ¶ 33(b)). Other than Plaintiff's own assertions, no evidence is offered to support this allegation. In contrast, Sabina Nowik—Garrett's aide and the lone eyewitness provided by Plaintiff to the events which occurred in Garrett's classroom—testified in her deposition that she never saw G.C. placed in the cool down room, much less for an entire day as alleged by Plaintiff. (Nowik Dep. at 75). The Court has previously held that the use of the bathroom as a cool down room for a limited duration, though perhaps inappropriate, does not constitute a violation of due process. Without something in the way of evidence—other than Plaintiff's own hearsay assertions to that effect—as to whether G.C. was placed in the cool-down room for extended periods, the Court will not revisit this holding.

In addition to the allegations contained in the Amended Complaint, Plaintiff attempts to create a question of fact in the opposition to summary judgment as to whether Garrett sexually abused G.C. (Doc. 94 at 12). Plaintiff argues that because Garrett invoked her Fifth Amendment rights when asked if she had ever sexually or physically abused G.C. in the bathroom, a question of fact exists because in a civil case a jury may draw an adverse inference from Garrett's invocation of her Constitutional rights. However, as Plaintiff has presented no evidence of sexual or physical abuse of G.C. or even evidence that Garrett was alone in the bathroom with G.C., the Court will not allow such negative inference, if any, that might be drawn from Garrett's statement to preclude the entry of summary judgment. Avirgan v. Hull, 932 F.2d 1572, 1580 (11th Cir. 1991) (invocation of fifth amendment does not give rise to inference sufficient to preclude summary judgment). "The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence

witnessing numerous acts of Garrett's abuse and intimidation upon G.C.'s classmates.[5]

Mrs. Cosco alleges that Garrett's conduct caused G.C. to regress, to become more aggressive towards adults and authority figures, and to suffer long-term emotional and psychological trauma. (Cosco Dep. at 51; Am. Compl. ¶ 34). Plaintiff offers the reports of expert witnesses Deborah O. Day, Psy.D.; Bennett Leventhal, M.D.; and Catherine Trapani, Ph.D. in support of her claim that Garrett's conduct had a negative impact upon G.C.'s behavior.

In the allegations against the School Board, G.C. contends that the School Board had actual or constructive knowledge of Garrett's propensity to use excessive force because there were complaints of abuse against her at Indian Trails, the school she taught in before she was transferred to South Seminole.[6] Thus, G.C. contends that the School Board was on notice of the risk that Garrett posed to students, the disregard of which equates to reckless and deliberate indifference to G.C.'s substantive due process rights.

Despite Plaintiff's claims that G.C. regressed and developed problems with authority

---

needed to meet the burden of production." Id.

[5] Counsel for Plaintiff lists thirteen acts of intimidation or abuse allegedly witnessed by G.C. Curiously, in T.W. ex rel. v. Seminole County Sch. Bd., No.6:07-cv-155, Doc. 1 (M.D. Fla. filed Feb. 2, 2007), counsel alleged that T.W. witnessed the same thirteen acts of intimidation or abuse. The Court finds this disturbing because G.C. attended South Seminole between August 2001 and May 2003 while T.W. attended South Seminole between May 2004 and October 2004, thereby presenting the Court with a logical conundrum.

[6] Details of Garrett's teaching at Indian Trails Middle School and the allegations made regarding her time there are set forth in J.V. at Docket Number 166.

-4-

figures as a result of Garrett's alleged abuse, G.C.'s various behavioral problems prior to enrolling at South Seminole have been well documented. While in preschool, it was noted that G.C. was "highly distractable, self directed, and impulsive," "often unable to control impulsive behaviors," and "unaware of dangerous situations." (Ex. A to Doc. 81, at 2). In 1994, G.C. was documented as "difficult to handle at home" and "impulsive . . . and will dash off quickly without warning." (Ex. B to Doc. 81, at 1). A 1994 Social and Developmental Assessment conducted by Rockaway Township Public Schools Child Study Social Team described G.C. as "impulsive at times" and noted that G.C. had begun to swear in inappropriate situations. (Ex. C to Doc. 81, at 3). Because G.C. walked on desks in the classroom and engaged in destructive behavior in his room when sent there for punishment, G.C. began treatment at Kennedy Krieger Institute in May 1996. (Cosco Dep. at 19-20). Dr. Elaine Tierney of the Kennedy Krieger Institute reported that G.C. "has no self-injurious behavior," is "rarely aggressive to others," "will scream, stomp and verbally lash out and will curse," and "previously used to hit individuals but no longer does this." (Ex. D to Doc. 81, at 6). Dr. Tierney also noted that G.C. would "elope" and that "[h]is parents have to be extremely careful or he will run away . . . and possibly run into traffic." (Id.). A February 1997 Educational Assessment Report by the Howard County Public School System noted that G.C. displayed an "increase in aggressive behaviors . . . and a regression in academics" since November 1996. (Ex. E to Doc. 81, at 8). The report also documented that G.C. tended to "hit, kick, bite and throw property." (Id.). G.C.'s 1999 Personalized Student Plan from Worthington Elementary states that "[o]ther than a few incidents of kicking at his adult supervisor," G.C. had not been aggressive towards either staff or students during the 1998-

1999 school year and that G.C. needed to be "closely supervised" to keep him from running off the playground. (Ex. F to Doc. 81, at 1). After arriving in Florida, G.C. received an Individual Education Plan from Exceptional Student Support Services that defined specific goals for G.C., including the reduction of "running away" episodes and disruptive vocalizations. (Ex. G to Doc. 81, at 1).

Despite Plaintiff's numerous allegations, the only admissible evidence to support the claims of abuse consists of bruising found on G.C.'s knees, the deposition testimony of Sabina Nowik ("Nowik"), Garrett's teacher's aide during the 2001-2002 school year and a portion of the 2002-2003 school year, and G.C.'s statements to Dr. Roy H. Lubit during a court-ordered independent medical exam.[7]

---

[7]Plaintiff attempts to introduce multiple hearsay statements in an attempt to defeat summary judgment and to create issues of fact. First, Plaintiff offers—by way of Mrs. Cosco—the hearsay statements of Georgia Dunston ("Dunston"). Mrs. Cosco alleges that Dunston, a bus driver for Seminole County, witnessed Garrett force G.C. to "lick the bricks" of the school building. Plaintiff argues that this evidence is not hearsay under Federal Rule of Evidence 801(d)(1)(A) because Ms. Dunston is available to testify at trial. (Doc. 94 at 5). This, however, is an incorrect interpretation of Rule 801(d)(1)(A), which allows prior inconsistent statements to be used for their substantive purpose. Under Rule 801(d)(1)(A), a statement is not hearsay if the declarant testifies at trial and the statement is "inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Plaintiff's contention that Dunston is available to testify at trial is immaterial. Here, Plaintiff has presented no statement by Dunston herself made either under oath or inconsistent with any prior testimony. As such, the Court finds that Dunston's alleged statement that Garrett forced G.C. to "lick the bricks" is inadmissible hearsay evidence and will not be considered for summary judgment purposes.

Plaintiffs also attempt to introduce the hearsay statements of G.C. to Dr. Day—a psychologist hired to conduct a forensic assessment at the request of G.C.'s attorneys—regarding the allegations of abuse by Garrett. According to Dr. Day's Report, G.C. told her that "[Garrett] was not very nice to me," that "[Garrett] hit me a lot," that Garrett hit him with an extension cord, that Garrett called him bad names, that Garrett would hold him down and sit on him, and that Garrett was a "mean person." (Day Report, Ex. 2 to Doc.

Plaintiff provides evidence of one instance of physical injury to G.C. allegedly caused by Garrett. Mrs. Cosco described one incident where G.C. returned from school with "red and slightly swollen knees" that left bruises that took approximately one week to fade. (Cosco Dep. at 32, 65-66). Though unsure of the date, Mrs. Cosco believes that the incident happened during the 2001-2002 school year. (Id. at 63). When Mrs. Cosco questioned Garrett about G.C.'s bruised knees, Garrett told her that G.C. banged his knees against the door and stated "you know how these children are." (Id. at 30). Mrs. Cosco also spoke with Assistant Principal Josephine Opisso, who confirmed Garrett's story that G.C. had probably injured himself. (Id.). Mrs. Cosco never took G.C. to see a doctor regarding the bruises, never bandaged G.C.'s knees in any manner, and never noticed any scabbing on the knees.[8]

---

91, at 6). Dr. Day also notes that G.C. would reference his mother for answers to some of her questions but does not indicate which questions G.C.'s mother helped to answer. (Id. at 7).

Plaintiff argues that these statements are admissible hearsay under Federal Rule of Evidence 803(4) as statements made for the purpose of treatment or diagnosis. (Doc. 94 at 5-6). Rule 803(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible for their substantive purposes. Fed. R. Evid. 803(4). In her report, Dr. Day clearly states that she was hired to provide a "forensic assessment" at the request of G.C.'s attorneys in order "to assist with understanding how this abuse has impacted on [G.C.]." (Day Report at 10). The Court finds that under the circumstances presented here, the statements made to Dr. Day were not "statements made for purposes of medical diagnosis or treatment," but rather made in preparation of litigation. As such, the statements do not contain the assurances of reliability or indicia of truthfulness normally associated with statements made for the purpose of receiving medical treatment or diagnosis, especially in light of Mrs. Cosco's help in answering some of the questions asked. Therefore, the Court finds that the statements made by G.C. to Dr. Day are inadmissible hearsay.

[8]Counsel argues that Dr. Daniel R. Monette "testified that G.C.'s bruised knees were consistent with G.C. banging his knees against the closed bathroom door," improperly

(Id. at 32). Plaintiff provides no evidence that the injury to G.C.'s knees was caused by any abusive conduct of Garrett.[9]

Plaintiff also provides the deposition testimony of Nowik in support of her opposition to Garrett's motion for summary judgment. Though Nowik admits that she and G.C. were rarely in Garrett's classroom,[10] she does provide additional details of the interactions between Garrett and G.C. (Nowik Dep. at 30). Regarding the allegations of verbal abuse by Garrett, Nowik claims that Garrett would "yell at G.C." at the bus stop, but she clarifies

---

implying that the bruising at issue was a result of Garrett's placement of G.C. into the cool-down room. (Doc. 94 at 5). The record reflects that Dr. Monette examined G.C. on multiple occasions, beginning with a regular physical exam in August 2003. (Monette Dep. at 5-10). G.C. did not complain of any knee injuries until his fifth visit on May 25, 2004, approximately one year after G.C. last attended class with Garrett and two years after Mrs. Cosco alleged that she noticed bruising on her son's knees. (Id.). During that May 2004 visit, Dr. Monette conducted an MRI on G.C.'s left knee after "his caretakers and himself" described pain after twisting and falling onto it. G.C. had swelling of the joint but no significant injury to the ligaments. In response to a direct question during his deposition regarding whether the type of knee injury presented by G.C. could be consistent with banging a knee on a door, Dr. Monette opined that it could be from anything, including falling or banging a knee against a door. (Id. at 17-18).

[9]Mrs. Cosco also attempts to introduce G.C.'s statement to her regarding the incident. G.C. first told his mother that the bruised knees were the result of him injuring himself, (Cosco Dep. at 31), but Mrs. Cosco claims that he later changed his story and told her that the bruises were from Mrs. Garrett hitting him, (id.). Despite Plaintiff's assertion that G.C.'s statement that Garrett hit him is admissible hearsay under Federal Rule of Evidence 803(3), the Court finds that this statement constitutes inadmissible hearsay which is not to be considered for summary judgment purposes because it is not a statement of G.C.'s "then existing state of mind, emotion, sensation, or physical condition." Fed. R. Evid. 803(3). Instead, this is a later statement of G.C.'s memory or belief offered to prove the truth of the matter asserted—that Garrett hit G.C. However, G.C.'s statement that his injuries were a result of self-injurious behavior would not be hearsay and is admissible as a party admission.

[10]Nowik states that G.C. was not in Garrett's classroom on an everyday basis but rather only on certain days when G.C. was not with another teacher at South Seminole.

-8-

that she felt that this was not done "to put them down, hurt them or anything like that, it was more corrective verbal than anything. It was more I told you to do this, more commanding verbal instead of . . . stupid, and stuff like that. She wasn't a name caller or anything." (Id. at 32, 34). During the limited time that Nowik and G.C. were both present in Garrett's classroom, Nowik recalls no use of profanity in the presence of G.C. (Id. at 64-65).

Nowik also details Garrett's physical restraint of G.C. on several occasions. (Id. at 77). Without describing Garrett's reason for the restraint, Nowik states that Garrett on several occasions "had to put [G.C.'s] arms behind him and walk him out" of the cafeteria. (Id.). Additionally, Nowik describes the need to restrain G.C. at times because G.C. "was a runner." (Id. at 87). At the bus stop, Garrett would sit next to G.C. and place her leg over his legs to keep him next to her when he "was in the running mood." (Id. at 77, 87-88). When G.C. would attempt to run away while transitioning from the classroom to the bus stop, Garrett would sometimes grab him and pull him back to keep him from running away. (Id. at 85-86). During these restraints, Nowik never saw anything between Garrett and G.C. that she considered abusive. (Id. at 102).

On October 2, 2008, Dr. Lubit interviewed G.C. pursuant to a court-ordered independent medical examination.[11] During this examination, G.C. stated that Garrett was

---

[11]Portions of G.C.'s interview with Dr. Lubit are admissible against Plaintiff as a party admission under Federal Rule of Evidence 801(d)(2)(A). In an attempt to avoid summary judgment, however, Plaintiff seeks to admit portions of G.C.'s statements to Dr. Lubit as evidence creating a material issue of fact. Plaintiff argues that these statements fall under Federal Rule of Evidence 803(4)'s exception. The Court finds Plaintiff's argument unavailing. Because Plaintiff did not voluntarily seek out Dr. Lubit for the purpose of treatment or diagnosis, but rather was seen by him pursuant to Court order, G.C.'s statements do not fall under 803(4)'s "for the purpose of diagnosis or treatment" exception

-9-

a "good" teacher, that he liked "lots of stuff" about her, that Garrett "was nice," and that Garrett was strict but fair. (Lubit Interview, Ex. 5 to Doc. 78, at 40-42). When questioned whether there were any "bad things" about Garrett, G.C. responded in the negative. (Id. at 42). G.C. also denied that Garrett ever hurt him or hit him.[12] (Id.).

---

and lack the assurances of candor normally associated with seeking a medical diagnosis or treatment, namely the desire to receive proper treatment.

[12]However, when asked whether he ever witnessed Garrett hit other people, G.C. stated that Garrett would hit him, other staff members, and other students, indicating that Garrett hit him in the groin with a broomstick. (Id. at 44-45). G.C. also stated that Garrett "used bad words . . . hit me a lot . . . [and] threw a shoe at me." (Id. at 50). G.C. later told Dr. Lubit that the most painful time he was ever hit was by Garrett with her bare hands, but G.C. does not know why she hit him or remember where she hit him. (Id. at 61-62). In response to G.C.'s changing story, Dr. Lubit and G.C. had the following exchange:
Q: Did someone tell you to say that Ms. Garrett hit you a lot?
A: Yes.
Q: Who told you to say that?
A: My mom.
Q: Your mom told you to say that Ms. Garrett hit you a lot?
A: Yes.
Q: When did she tell you that?
A: A lot.
. . .
Q: So, did your mom tell you, you should tell—she wants you to tell people that Ms. Garrett hits you a lot?
A: Yeah, she wanted me to tell you (laughs) Ms. Garrett hit me a lot.
Q: And did she hit you a lot?
A: Yes.
Q: Or just a little bit?
A: A lot.
Q: Did she really?
A: Yes.
Q But before you said that she didn't hit you.
A: She did.
Q: Did your mom tell you other things to say to me?
A: Yes.
Q: What else did she tell you to tell me?
A: Lots of stuff.

## II. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "A nonmoving party, opposing a motion for summary judgment supported by affidavits [or other relevant evidence] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e)(2) (providing that the nonmovant "must . . . set out specific facts showing a genuine issue for trial").

In ruling on a motion for summary judgment, the Court construes the facts and all

---

. . .
Q: So, your mom wanted me—wanted you to tell me that Ms. Garrett hit you a lot?
A: Yes.
(Lubit Interview at 50-52).

G.C. also makes several statements which appear to contradict statements that this Court has found to constitute inadmissible hearsay. Despite Plaintiff's contention that Dunston stated that Garrett forced G.C. to "lick the bricks" at school, G.C. not only denies that Garrett ever told him to lick the bricks but also states that instead, Garrett repeatedly told him not to do such. (Id. at 48-49). Also, in contradiction to his statements to Dr. Day, G.C. relates that his father and a staff member at Carlton Palms hit him with an extension cord without ever mentioning that Garrett did such a thing. (Id. at 25, 59).

reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Some degree of factual dispute is expected, but to defeat a motion for summary judgment the factual dispute must be material and genuine. That is, the factual evidence must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### III. Garrett's Motion for Summary Judgment

Garrett raises several arguments in her motion for summary judgment, but the only argument that requires consideration is her claim that G.C. suffered no constitutional deprivation of his substantive due process rights.[13] (Doc. 81 at 16). The Fourteenth Amendment's substantive due process right protects persons from the arbitrary exercise of governmental power. Daniels v. Williams, 474 U.S. 327, 331 (1986). Embodied in this right is the right to be free from excessive force at the hands of a government official. Dockery v. Barnett, 167 F. Supp. 2d 597, 602 (S.D.N.Y. 2001). Substantive due process reflects "the

---

[13]Garrett also argues in her motion for summary judgment that Plaintiff's claims are barred by a four-year statute of limitations. Garrett argues that because G.C. filed his complaint on May 14, 2007, all incidents which occurred prior to May 14, 2003 are barred. (Doc. 81 at 22). However, "[a] cause of action under [§ 1983] will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." Under the facts of this case, the question of when—if ever—G.C.'s mother knew or should have known of the injury—if any—inflicted upon G.C. and who inflicted it are questions of fact for a jury to decide, especially in light of the nature of the alleged injuries.

right to be free of state intrusion into realms of . . . bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court." Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980). In viewing the evidence in the light most favorable to the Plaintiff, the Court can infer some injury inflicted on G.C., but "some injury" is insufficient. To succeed in establishing a § 1983 claim, G.C. must demonstrate an injury amounting to a deprivation of his constitutional rights; it must be an injury that literally shocks the conscience of the Court.

The Court does not condone verbal abuse directed at any child, much less children with developmental disabilities. Though Plaintiff has alleged in the Amended Complaint that Garrett would "routinely curse at G.C. and other classmates," Plaintiff has not provided evidence to support such a claim. Moreover, even had evidence been introduced supporting such a claim, the use of foul or belittling language does not amount to a violation of a plaintiff's constitutional rights.[14] Simply put, "[v]erbal abuse is normally not a constitutional violation." Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000).

Physical abuse, however, may rise to the level of a deprivation of a constitutional right.[15] The Eleventh Circuit, in addressing corporal punishment in the school setting, has held that "excessive corporal punishment, at least where not administered in conformity with

---

[14]Even assuming the Court had considered G.C.'s hearsay statements regarding Garrett's use of an unspecified "bad name," such verbal abuse alone does not arise to a constitutional violation.

[15]Regardless of whether G.C.'s claims arise from "corporal punishment" or from "abuse," the same "shocks the conscience" standard applies, as both claims are brought under the Fourteenth Amendment Due Process Clause. A.B. v. Seminole County Sch. Bd., No. 6:05-cv-802, 2005 WL 2105961, at *7 (M.D. Fla. Aug. 25, 2005).

a valid school policy authorizing corporal punishment . . ., may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." Neal v. Fulton County Bd. of Educ., 229 F.3d 1069, 1075 (11th Cir. 2000). "A plaintiff must prove at a minimum that '(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury.'" Peterson v. Baker, 504 F.3d 1331, 1337 (11th Cir. 2007) (quoting Neal, 229 F.3d at 1075). In order to determine whether the amount of force used was obviously excessive, a court considers the totality of the circumstances, paying particular attention to the following factors: (1) the need for the application of corporal punishment; (2) the relationship between the need and amount of punishment administered; and (3) the extent of the injury inflicted. Id.

The conscience-shocking threshold is more quickly reached in cases where the victim is particularly vulnerable to abuse and is otherwise defenseless. Accordingly, G.C.'s developmental disability must be considered in determining whether Garrett's actions and any resulting injury to G.C. shock the Court's conscience. See Dockery, 167 F. Supp. 2d at 604 ("[T]he issue is better reserved for a jury—especially considering that . . . plaintiffs in this case are autistic children, who are more vulnerable and less capable of communicating than other children."); Roe ex rel. Preschooler II v. Nevada, 332 F. Supp. 2d 1331 (D. Nev. 2004) (denying motion to dismiss § 1983 claims against teacher who allegedly slapped an autistic, non-verbal child or made him slap himself, slammed the child into a chair, and made him walk from the bus to the classroom without shoes); see also Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1240 (10th Cir. 1999) (considering victim's severe disabilities

in determining a principal's § 1983 liability for failure to implement policies to protect students from each other); cf. Fessler v. Giles County Bd. of Educ., No. 1-00-0120, 2005 WL 1868793 (M.D. Tenn. July 27, 2005). G.C., however, does not suffer from disabilities as severe as those of the children described in these cases; he has been described as being both "verbal" and capable of carrying on a conversation. Mrs. Cosco herself reiterated that G.C. had told her that Garrett hit him and that he was afraid to go to school for fear of being punished.

Though reasonable people may disagree as to when—if ever—corporal punishment is necessary in a school setting, the record evidence establishes that the limited incidents of physical restraint used on G.C. by Garrett did not result in an injury which rises to a level which shocks the Court's conscience. The record reflects that Garrett would restrain G.C. to prevent him—a student known as a "runner"—from attempting to run away, arguably for safety purposes. Garrett did this by placing her leg over G.C.'s legs while they waited at the bus stop. The amount of force used to restrain G.C. was not "obviously excessive," nor did it present a reasonably foreseeable risk of bodily injury. No injury, much less a severe injury, occurred as a result of this conduct; G.C. never sought medical attention. In fact, the only physical injuries alleged to have been suffered at the hands of Garrett were the bruised knees, and Plaintiff has not submitted any evidence establishing that these bruises were in any manner associated with Garrett's conduct.

Plaintiff also argues that in addition to the bruises, G.C. suffered emotional and psychological damage as a result of Garrett's direct abuse. However, while psychological abuse alone may rise to the level of a constitutional deprivation, no court has ever found a psychological injury to meet § 1983's high threshold. See Abeyta ex rel. Martinez v. Chama

Valley Indep. Sch. Dist., 77 F.3d 1253, 1256 (10th Cir. 1996); Brown ex rel. Brown v. Ramsey, 121 F. Supp. 2d 911, 923 (E.D. Va. 2000); see also M.M. ex rel. J.M. v. Tredyffrin/Easttown Sch. Dist., No. 06-1966, slip op., 2006 WL 2561242, at *13 (E.D. Pa. Sept. 1, 2006); S.M. ex rel. L.G. v. Lakeland Sch. Dist., 148 F. Supp. 2d 542, 547-48 (M.D. Pa. 2001). Accordingly, given the what can best be described as minimal physical injuries inflicted upon G.C., the Court cannot find an injury that literally shocks the Court's conscience and amounts to a deprivation of G.C.'s constitutional rights.

Plaintiff also alleges that G.C. suffered emotional and psychological abuse due to his witnessing Garrett's abuse of his classmates. While the Court does not necessarily require that psychological abuse be accompanied by a physical confrontation in order for an actionable § 1983 claim to be presented, the Court does require something in the way of evidence to survive a motion for summary judgment. Despite listing thirteen incidences of abuse that G.C. allegedly witnessed, (Am. Compl. ¶¶ 32(a)-(m)), no evidence has been presented that G.C. actually witnessed anything extreme or, even more problematic, that G.C. was even present at South Seminole at the time any of these events occurred.[16] The Court is asked to presume that G.C. witnessed Garrett's conduct because of two basic facts: that G.C. was once a student of Garrett[17] and that Garrett was subsequently removed and

---

[16] The Court has previously detailed the logical disconnect between the events allegedly witnessed as described in the Amended Complaint and those exact same allegations contained in T.W., a companion case involving the same counsel.

[17] This fact alone is insufficient. The setup at South Seminole was that two small classes rotated between teachers in separate classrooms, spending half of the day with each teacher.

-16-

arrested for child abuse in October 2004, approximately one and a half years after G.C. had left South Seminole. Given the total absence of evidence of neglect, the minimal physical abuse—if any—regarding G.C., and the lack of evidence that G.C. witnessed any abuse directed at his classmates, this Court finds that G.C.'s alleged psychological and emotional injuries from witnessing Garrett's treatment of other students does not rise to the exacting "shocks the conscience" standard required by the Eleventh Circuit in § 1983 claims.[18]

"The Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action. Neal, 229 F.3d at 1074. As the Court finds that G.C.'s constitutional rights have not been violated, it is unnecessary to determine whether the law was clearly established at the time of the alleged injury in order to determine the merits of Garrett's qualified immunity defense. Accordingly, Garrett's Motion for Summary Judgment (Doc. 81) is hereby granted.

### IV. Seminole County School Board's Motion

#### A. § 1983

"A plaintiff seeking to impose liability on a municipality (school district) under section 1983 must identify a municipal 'policy' or 'custom' that caused a deprivation of federal rights." Davis ex rel. Doe v. Dekalb County Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000). Liability will not attach under a theory of *respondeat superior*; rather, a school board policy or custom must actually cause the deprivation of the plaintiff's constitutional rights if a school

---

[18] Even assuming that the Court accepted into evidence all of the previously excluded hearsay testimony, the Court would still find that because of the minimal physical injury and the lack of evidence of neglect the Court's conscience is not shocked.

board is to be held liable for a plaintiff's constitutional injury. Doe v. Faerber, 446 F. Supp. 2d 1311, 1316 (M.D. Fla. 2006).

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A prerequisite to municipal liability is that the plaintiff must have suffered a constitutional violation at the hands of a government actor. See Davis, 233 F.3d at 1375. If that prerequisite fails, liability on the part of the municipality must fail as well. S.M., 148 F. Supp. 2d at 551 ("Unless the plaintiff can establish that she suffered a violation of a constitutional right, 'it is irrelevant for purposes of section 1983 liability whether [the municipality's] policies, enacted with deliberate indifference, caused an injury.'" (quoting Regalbuto v. City of Phila., 937 F. Supp. 374, 378 (E.D. Pa. 1995))); Thomas, 467 F. Supp. 2d at 492 ("[P]laintiffs' failure to proffer competent evidence to support a finding that [the defendant] deprived [the child] of a constitutional right forecloses their ability to establish municipal liability against these defendants for the same conduct."); Boldthen v. Indep. Sch. Dist., 865 F. Supp. 1330, 1338 (D. Minn. 1994) ("[T]he lack of a constitutional violation by school officials proves fatal to Plaintiffs' claim against the school district."). Because the Court has already concluded that G.C. has failed to establish a constitutional violation, any attempt to impose § 1983 liability on the School Board must be rejected. As to Count I, Defendant Seminole County School Board's Motion for Summary Judgment (Doc. 79) must be granted.

B. Negligent Hiring, Supervision, and Retention

Having dismissed G.C.'s federal claims, the Court declines to exercise supplemental jurisdiction over the state law claim.  See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when claims giving rise to original jurisdiction have been dismissed).  Accordingly, G.C.'s state law claim (Count III) is hereby dismissed without prejudice.

## V.  Conclusion

In accordance with the foregoing discussion, it is hereby **ORDERED** as followed:

1.  Defendant Garrett's Motion for Summary Judgment (Doc. 81) is **GRANTED**.

2.  Defendant Seminole County School Board's Motion for Summary Judgment (Doc. 79) is **GRANTED IN PART** and **DENIED IN PART**.  Summary Judgment is **GRANTED** as to Count I and **DENIED** without prejudice as to Count III.

3.  Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claim in Count III.  Accordingly, the claim is **DISMISSED WITHOUT PREJUDICE** to refile it in state court.  As set forth in 28 U.S.C. § 1367(d), the period of limitations for this claim is tolled "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

4.  All other pending motions are **DENIED as MOOT**.

5.  The clerk is directed to enter judgment providing that Plaintiff shall take nothing from Defendants on Count I or Count II.  Thereafter, the Clerk shall close the file.

**DONE** and **ORDERED** in Orlando, Florida this 9th day of June, 2009.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party